UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEVONTE' REESE,<br><br>Plaintiff(s),<br><br>v.<br><br>NPSG GLOBAL, LLC,,<br><br>Defendant(s). | Case No. 2:19-CV-209 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff DeVonte' Reese's ("plaintiff") motion for conditional certification and approval of *Hoffman-Laroche* notice pursuant to 29 U.S.C. § 216(b). (ECF No. 52). Defendant NPSG Global, LLC ("defendant") filed a response (ECF No. 59), to which plaintiff replied (ECF No. 60).

## I.  Background

The instant action arises from defendant allegedly misclassifying certain employees as either 1099 independent contractors or salaried exempt employees. (ECF No. 52 at 5). As a result, the misclassified employees were (1) denied overtime pay and (2) paid less than minimum wage as required by the Fair Labor Standards Act ("FLSA") and Nevada law. *Id.*

In April 2015, defendant hired plaintiff as a "tier III laborer."[1] *Id.* at 7. Defendant paid plaintiff $200 per day for up to twelve hours of work and $25 per hour thereafter. *Id.* However, plaintiff alleges that "[d]efendant frequently failed to pay [p]laintiff at the contracted rate of $25.00 per hour for hours Plaintiff worked in excess of 12 in a day, despite this being a regular

---

[1] Tier I, tier II, and tier III laborers have the same job description, duties, and obligations. (ECF No. 52 at 7–8). Defendant differentiated between tiers of laborers based upon their tenure, with "tier I" laborers being the least experienced and "tier III" laborers being the most experienced.

occurrence." *Id.* at 8. Plaintiff avers that defendant improperly characterized him and the other laborers as 1099 independent contractors instead of hourly non-exempt employees. *Id.*

In January 2016, defendant promoted plaintiff to "site lead" and reclassified him as a salaried W-2 employee. *Id.* At most, plaintiff was paid an annual salary of $55,000, and he was not paid for any overtime hours that he worked. *Id.* at 8–9. Plaintiff alleges that "[d]efendant has misclassified all other site leads it employs as salaried exempt employees, thereby unlawfully depriving them of overtime pay." *Id.* at 9.

Defendant promoted plaintiff to "project manager" in January 2017, and increased his salary to $75,000. *Id.* "Plaintiff was still considered a salaried exempt employee during the entirety of his time as a project manager with Defendant, and he was never paid overtime pay despite routinely working significantly more than 40 hours in a workweek." *Id.* at 10.

Plaintiff alleges that his job duties did not change substantially over this time, despite the promotions. *Id.* at 7–9. As a result, plaintiff's job duties predominantly entailed manual labor regardless of his job title. *Id.* Plaintiff further alleges that he raised concerns and lodged grievances with his wrongful classification as a salaried employee several times. (ECF No. 1 at 6). Each time, defendant responded that there was no issue with his wages, status, pay, or hours. *Id.*

Plaintiff then filed the instant case alleging six causes of action: (1) failure to pay wages in violation of the FLSA, (2) failure to pay overtime wages in violation of the FLSA, (3) failure to pay minimum wages in violation of the Nevada Constitution, (4) failure to pay wages for all hours worked in violation of Nevada law, (5) failure to pay overtime wages in violation of Nevada law, and (6) failure to pay all wages due and owing upon termination in violation of Nevada law.

Plaintiff now moves to certify all exempt-classified project managers and site leads as a class for the purposes of his FLSA claims.[2]

---

[2] Plaintiff originally wanted to certify tier I, tier II, and tier III laborers, crew leads, site leads, and project managers in the United States within the last three years. After defendant's response to the instant motion, plaintiff "withdr[ew] his request that notice be sent to non-exempt [t]ier I-III laborers, [p]roject [m]anagers and [s]ite [l]eads classified as non-exempt, and 1099 employees whose only work for NPSG occurred before February 4, 2016." (ECF No. 60 at 1).

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

Under the FLSA, an employee may initiate a collective action on behalf of himself or herself and other similarly situated people. 29 U.S.C. § 216(b). Although the FLSA does not define the term "collective action," the Ninth Circuit held that a collective action is "an action brought by an employee or employees for and on behalf of himself or themselves and other employees similarly situated." *Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971) (quoting H. R. Rep. No. 326, 80th Cong., 1st Sess. at 14) (internal quotations omitted).

The FLSA does not require certification for collective actions; however, "certification in a § 216(b) collective action is an effective case management tool, allowing the court to control the notice procedure, the definition of a class, the cutoff date for opting-in, and the orderly joinder of parties." *Edwards v. City of Long Beach*, 467 F. Supp.2d 986, 989 (C.D. Cal. 2006). "Whether to permit a collective action under the FLSA is within the court's discretion, and neither the Supreme Court nor the Ninth Circuit has defined 'similarly situated.'" *Dualan v. Jacob Transp. Servs. LLC*, 172 F. Supp. 3d 1138, 1144 (D. Nev. 2016) (footnote citation omitted).

Courts in this circuit address certification for collective actions in two stages. *See, e.g.*, *Dualan*, 172 F. Supp. 3d 1138; *Lewis v. Nevada Prop. 1, LLC*, No. 2:12-CV-01564-MMD, 2013 WL 237098 (D. Nev. Jan. 22, 2013); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 208-CV-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009). "[T]he court must first decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (citations omitted). The second stage occurs "[o]nce discovery is complete and the case is ready to be tried, [when] the party opposing class certification may move to decertify the class." *Id.*

## III. Discussion

*A. Class certification*

Because the parties in this case have not engaged in substantial discovery, the court reviews the instant motion under the FLSA's first-stage analysis. At this stage, "[t]he [c]ourt

must determine whether the potential plaintiffs are 'similarly situated' to create an opt-in class under § 216(b)." *Lewis*, 2013 WL 237098, at *7; *see also Chemi v. Champion Mortg.*, No. 05-CV-1238 WHW, 2006 WL 7353427, at *3 (D.N.J. June 21, 2006) ("The threshold issue in determining whether it is appropriate to authorize class notice in an FLSA action is whether the class members are 'similarly situated.'"). "Because the court generally has a limited amount of evidence before it, the [i]nitial determination is usually made under a fairly lenient standard and typically results in conditional class certification." *Leuthold v. Destination Am.*, 224 F.R.D. at 467. "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Dualan*, 172 F. Supp. 3d at 1144.

Despite the lenient standard applied at the first stage, plaintiff must prove the propriety of class certification with more than "unsupported assertions of widespread violations." *Lewis*, 2013 WL 237098, at *8 (citing *Edwards v. City of Long Beach,* 467 F.Supp.2d 986, 990 (C.D.Cal.2006)). Instead, plaintiff must present "substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Benedict v. Hewlett–Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014) (quoting *Villa v. United Site Services of Ca.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012)).

The court finds sufficient evidence to show that plaintiff has met his lenient first-stage burden. Defendant argues that the majority of project managers' obligations are managerial and administrative. (ECF No. 59 at 4–8). However, plaintiff provides an email correspondence from Kristopher Mcintosh, a manager with NPSG, that indicates that project managers were frequently assigned to job sites where they acted as "support laborers." (ECF No. 62-1 at 3). Any project manager who "d[id] not embrace this understanding [would] be put on unpaid leave until NPSG ha[d] a project for [them] to manage." *Id.* Indeed, plaintiff alleges that he met with Mcintosh and Tyler Fribery, another NPSG manager, to discuss his concerns after plaintiff received the email. (ECF No. 62 at 5). At that meeting, plaintiff "was specifically told that the '[p]roject

[m]anager' role at NPSG was to be nothing more than a 'face and mouth,' and that [they] were really just needed 'from the shoulders down.'" *Id.*

In light of this evidence, plaintiff has shown a possible policy of treating project managers are exempt, salaried employees despite their job descriptions and duties regularly requiring them to engage in manual labor, rather than administrative or managerial functions.

B. *Plaintiff's proposed notice*

Next, the court considers whether to approve plaintiff's proposed notice and opt-in forms. After plaintiff substantially limited the scope of his proposed class, he provided amended notice and opt-in forms with his reply. (ECF Nos. 61-4 and 61-5). Notably, defendant did not lodge any specific objections with the previous form. Instead, defendant summarily objected "to the substance and method of plaintiff's proposed notice."[3] (ECF No. 59 at 23).

Accordingly, the court hereby conditionally approves plaintiff's amended notice and opt-in form. Plaintiff will be authorized to serve the proposed notice and opt-in forms by first class mail and email unless defendant files specific objections to the proposed forms by 5:00 p.m. on December 3, 2019.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for conditional certification and approval of *Hoffman-Laroche* notice (ECF No. 52) be, and the same hereby is, GRANTED.

---

[3] Defendant also objects to providing plaintiff with the contact information for potential plaintiffs and requests that any such information be provided to a third party. (ECF No. 59 at 24). Defendants cursorily argue that providing plaintiff with NPSG's employees' contact information raises privacy concerns. *Id.* However, the court "presume[s] that [plaintiff's attorneys] are professionals and officers of this court who recognize and perform their ethical obligations." *Cardoza v. Bloomin' Brands Inc.*, No. 13-CV-1820-JAD-NJK, 2014 WL 5454178, at *5 (D. Nev. Oct. 24, 2014). Accordingly, the court does not find reason to require that potential plaintiffs' contact information be provided only to a third party.

IT IS FURTHER ORDERED that defendant must provide plaintiff's counsel with the names and last-known addresses of all employees covered by the collective action within 60 days and in Microsoft Excel or compatible electronic format.

IT IS FURTHER ORDERED that, upon final court approval of the notice and opt-in forms, plaintiffs must serve them by first-class mail or email.

IT IS FURTHER ORDERED that the potential plaintiffs shall have 90 days from the date of mailing of the notice and consent-to-sue forms to submit their opt-in forms.

IT IS FURTHER ORDERED that defendant shall file its specific, written objections, if any, to plaintiff's proposed notice and opt-in forms by 5:00 p.m. on December 3, 2019.

DATED November 14, 2019.

_____
UNITED STATES DISTRICT JUDGE